UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Monode Marking Products, Inc. | ) | Case No. 1:18-cv-00016-DCN |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| v. | ) | |
| | ) | |
| Columbia Marking Tools, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## [Proposed] Findings of Fact and Conclusions of Law

WHEREAS, this patent infringement case is before the Court for construction of certain claim terms identified by the parties as a matter of law;

WHEREAS, the parties submitted opening and responsive briefs in support of their respective positions regarding disputed claim terms (ECF # 23, 24, 25, 27), followed by their Joint Claim Construction and Prehearing Statement (ECF # 29); and,

WHEREAS, the Court held a claim construction hearing on July 30, 2019, at which the Court received oral arguments regarding each disputed claim terms.

NOW, THEREFORE, the Court, having considered the evidence, briefs and arguments submitted by the parties, hereby enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### A.    Procedural History

1.    Monode Marking Products, Inc. ("Monode") filed this action against Columbia Marking Tools, Inc. ("CMT") on January 3, 2018, to enforce its rights under United States Patent No. 6,974,082 (the "'082 patent"). (ECF # 1.)

{8315137:3 }

2.    Monode alleges that CMT is making, importing, using, selling and offer to sell products in the United States that infringe one or more claims of the '082 patent, including CMT's I-Mark II-Read System.

3.    CMT denies infringing the '082 patent and has asserted invalidity as an affirmative defense.

4.    Pursuant to Local Patent Rule 4.4, the parties submitted opening claim construction briefs and evidence supporting claim construction, including expert testimony and declarations, on March 22, 2019 (ECF # 23, 24), and responsive claim construction briefs and evidence supporting claim construction on April 22, 2019 (ECF # 25, 27).

5.    Pursuant to Local Patent Rule 4.5, the parties submitted their joint claim construction and prehearing statement (the "Prehearing Statement") on April 29, 2019 (ECF # 29), in which they identified agreed-upon constructions for three claim terms, a disputed construction for one means-plus-function claim term, seven means-plus-function claim terms that CMT contends are indefinite, and one claim term that the parties disagree on whether it is in means-plus-function form.

6.    The Court held a claim construction hearing on July 30, 2019, at which it received oral arguments regarding each disputed claim terms. At the conclusion of the claim construction hearing, the Court invited the parties to submit proposed findings of fact and conclusions of law on the issue of indefiniteness and whether CMT, as the party challenging the validity of the '082 patent, met its burden of proof. (Minutes, ECF # 30.)

**B.    <u>The '082 Patent</u>**

7.    The '082 patent relates generally to the field of automated vision and marking systems and, more particularly, to a computer controlled system that is capable of

controlling, integrating and tracking the use and actions of various machines involved in a systematic vision and/or marking operation. ('082 patent col. 1, ll. 5-10.)

8.    The encoding, marking and detection of information on a manufactured article is useful for tracking, tracing, recording and verifying information regarding that article. (*Id.* at col. 1, ll. 17-20.)

9.    Different technologies exist for marking parts, including laser and ink jet printers, pin-marking machines, micro mills, devices for etching, lasers and the like. (*Id.* at col. 2, l. 66 – col. 3, l. 2.) Likewise, different technologies exist for reading marked parts include imagers, vision boards, hand-held scanners, fixed vision cameras, optical readers, charged coupled devices and the like. (*Id.* at col. 2, ll. 60-66.)

10.    At the time of the invention in question, the proliferation of different marking and vision machines made compatibility of disparate systems a key concern for those involved in the marking and vision fields. (*Id.* at col. 3, ll. 3-5.) As a result, each machine possessed its own interface and user instructions that often were distinct from other machines utilized in the operation, especially where marking and vision machines were utilized together. (*Id.* at col. 3, ll. 6-10.)

11.    The multiplicity of software applications and machines created problems for the vision and marking industry insofar as many of the applications and machines best suited to particular applications were not compatible with one another. (*Id.* at col. 3, ll. 41-45.) As a result, users were forced to implement multiple computer systems and become versed in the use of multiple applications and machines. (*Id.* at col. 3, ll. 45-48.)

12.    The invention of the '082 patent generally is directed to solving these and other problems by providing a software system for integrating and controlling the operation

of a plurality of vision and marking machines within a system and creating historical records relating thereto. (*Id.* at col. 4, ll. 13-34.) The '082 patent describes that this system selectively links the vision and marking machines to a user interface, and the interface or the elements of the system itself provide inputs to the software. (*Id.* at col. 4, ll. 16-19.)

**C.**     **Claim Terms Identified For Construction**

13.     In their Prehearing Statement, the parties identified eleven claim terms for construction: three with agreed-upon constructions; one that they agreed is in means-plus-function form but provided competing constructions; seven that they agree are in means-plus-function form for which Monode provided constructions and CMT contends are indefinite; and, one on which they disagreed on whether it is in means-plus-function form and CMT contended is indefinite. CMT subsequently informed the Court during the claim construction hearing that it agreed to Monode's position with respect to the latter (that "administrative control" does not require construction), so that construction of that term is no longer needed. (Hearing Tr., ECF # 32, at 2, ll. 10-22.)

14.     The parties have submitted agreed-upon constructions for the following three claim terms:

| Claim Term | Claims | Agreed Construction |
|---|---|---|
| machine interaction protocol | 1, 12 | a series of rules or instructions that allows for control of machines linked to the system |
| system integrity verification protocol | 1, 12 | a series of rules or instructions that relate to the system obtaining an install or update |
| data storage means | 4, 10, 20 | a database, a data storage system or external data storage system and equivalents |

15.     The parties agree that the claim term "means for reading or marking encoded information" (claims 1 and 7) is a means-plus-function claim term and they agree on its

corresponding function, but they disagree on the corresponding structure with respect to both of the claims in which it appears.

16.    The parties also agree that the following six claim terms are in means-plus-function form:

- "means for identifying an input" (claims 1 and 12)

- "data processing means for processing the input so as to generate a desired output" (claims 1 and 12)

- "control means" (claims 1 and 12)

- "means for selectively generating and retrieving data related to the marking system" (claim 14)

- "means for selectively verifying and updating system integrity" (claim 6)

- "means for selectively linking all of the machines in the vision/marking system to at least one user interface" (claim 12)

The parties also agree on the functions corresponding to each of these claim terms.

17.    Monode has proposed constructions for each of these six disputed claim terms and provided pinpoint citations to the '082 patent specification.

18.    CMT has not provided constructions for any of these six disputed claim terms. Instead, CMT contends that each of these claim terms is indefinite, and therefore each claim of the '082 patent is invalid, because the specification does not disclose corresponding structure, material or acts. CMT did not propose constructions in the alternative for the Court to consider if it finds that CMT has not meet its burden of proof on its indefiniteness contentions.

**D.    The Parties' Proffered Evidence**

19.    In support of its contention that these six disputed claim terms are indefinite, CMT proffered Andrew Habedank as its expert witness under Local Patent Rule 4.3(a).

20.     Monode did not identify an affirmative claim construction expert witness. It did, however, identify a rebuttal expert, Dr. Andrei Goryankin, under Local Patent Rule 4.3(b) in response to CMT's proffer of Mr. Habedank.

## CONCLUSIONS OF LAW

21.     For the reasons discussed below, the Court finds that CMT did not establish indefiniteness for any disputed claim term by clear and convincing evidence.

### A.     Claim Construction Principles

#### 1.     In General

22.     "It is a bedrock principal of patent law that the claims of a patent define the invention to which a patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments*, 52 F.3d 967, 976 (Fed Cir 1995) (en banc), *aff'd* 517 U.S. 370, 391 (1996). Claim construction is a question of law for the Court to decide. *Id.* at 979.

23.     There is a heavy presumption that claim terms carry their full "ordinary and customary meaning," as would be understood by a person of ordinary skill in the art question at the time of the invention. *Philips,* 415 F.3d at 1313-1314. A person of ordinary skill in the art is presumed to have read the claim not only in the context of the particular claim containing the disputed term, but in the context of the entire patent, including the specification, and with knowledge of the prosecution history. *See Multiform Desiccants, Inc. v. Medzan, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). Courts therefore construe claims in light of the patent's intrinsic evidence—the claims, specification, and prosecution history—

followed by extrinsic evidence, such as expert and inventor testimony, dictionaries, and learned treatises. *Id.* at 1314-17.

24.    The specification is "the single best guide to the meaning of a disputed term," and the specification "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Philips,* 415 F.3d at 1320 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Section 112 of the Patent Act, 35 U.S.C. § 112, states that the specification

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same … [and] … shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Although reference to the specification is potentially highly useful in construing or defining specific terms, or in providing context to terms within the individual claims, the Federal Circuit has warned courts against reading limitations from the specification, most especially from the description of specific or preferred embodiments, into an individual claim. *See Philips* at 1322; *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002); *Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005); *Gemstar–TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1366 (Fed. Cir. 2004).

25.    The Federal Circuit has also long held that the prosecution history may be relevant when attempting to interpret disputed terms in the claim language of a patent. The prosecution history is relevant in so far as it may provide some evidence as to how the inventor, and the United States Patent and Trademark Office ("PTO") understood the patent, and as to whether the inventor, by disclaiming a particular interpretation of the patent, "limited the invention in the course of prosecution, making the claim scope

narrower than it would otherwise be." *Philips* at 1317 (citing *Vitronics*, 90 F.3d at 1582–83); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005); *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988).

26.    The language of the claim, the information contained in the specification, and the prosecution history available through the public notice requirements in the patent process are all considered intrinsic sources for determining the meaning of disputed terms in a patent claim. In addition, outside or extrinsic sources such as dictionaries, treatises, and expert testimony may all be considered to discern the meaning of disputed terms so long as they do not "contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Philips* at 1324.

### 2.    Construction of Means-Plus-Function Claim Elements

27.    Under 35 U.S.C. § 112, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f).

28.    This form of claiming, known as "means-plus-function," permits a patentee to recite a claim element as a means for performing a function without also reciting a particular structure. *See id. See also Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc).

29.    Use of the word "means" creates a rebuttable presumption that a term is in means-plus-function form, whereas absence of the word "means" gives rise to a rebuttable presumption that it is not in means-plus-function form. *Williamson*, 792 F.3d at 1348.

30. Once a claim element has been identified as being in means-plus-function form, its construction is a two-step process. *See Williamson*, 792 F.3d at 1351. First, the Court must identify the claimed function, and second it must "determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.*

31. In cases involving a computer-implemented invention that invokes means-plus-function claiming, the "corresponding structure for a function performed by a software algorithm is the algorithm itself." *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 621 (Fed. Cir. 2015). *See Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1329, 1333 (Fed. Cir. 2008). ("[T]his court has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor.").

32. An algorithm for a computer-implemented means-plus-function claim term "may be expressed as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Williamson*, 792 F.3d at 1352.

### 3. Invalidity Due To Indefiniteness

33. A patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b).

34. To be definite, a patent claim, viewed in light of the specification and prosecution history, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014).

35. "Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly

indefinite claim language is subject to construction." *Praxair, Inc. v. ATMI, Inc.,* 543 F.3d 1306, 1319 (Fed. Cir. 2008); *see also Viva Healthcare Packaging (USA) Inc. v. CTL Packaging USA, Inc.,* No. 3:13-CV-00569-MOC, 2015 WL 1346091, at *6 (W.D.N.C. Mar. 24, 2015) (collecting Federal Circuit cases that "stated numerous times that a district court's inquiry on indefiniteness is appropriate at the claim construction stage").

36.     Means-plus-function claim terms are subject to the definiteness requirement under 35 U.S.C. § 112(b). *EON Corp. v. AT&T Mobility LLC,* 785 F.3d 616, 624 (Fed. Cir. 2015). If the specification does not disclose structure corresponding to the claimed function, the claim is indefinite. *Williamson,* 792 F.3d at 1352. Likewise, if the specification fails to disclose an algorithm for performing a claimed software function, the claim is indefinite. *EON Corp.,* 785 F.3d at 624.

37.     By statute, courts must presume that a patent's claims are valid. 35 U.S.C. § 282(a). Owing to this statutory presumption, "[t]he party alleging that the specification fails to disclose sufficient corresponding structure must make that showing by clear and convincing evidence." *TecSec, Inc. v. IBM Corp.,* 731 F.3d 1336, 1349 (Fed. Cir. 2013) (reversing district court's finding of indefiniteness); *see Cox Commun. Inc. v. Sprint Commun. Co. LP,* 838 F.3d 1224, 1228 (Fed. Cir. 2016) ("Any fact critical to a holding on indefiniteness … must be proven by the challenger by clear and convincing evidence."); *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC,* 748 F.3d 1134, 1141 (Fed. Cir. 2014) (same).

38.     When considering whether the specification discloses sufficient structure for a means-plus-function claim term, courts must appreciate the important "distinction between whether a structure is disclosed and whether it is adequate." *Spa Syspatronic AG v. United States,* 117 Fed. Cl. 377, 384 (Fed. Cl. 2014).

39.     Computer-implemented inventions with means-plus-function claim terms generally fall into two classes of cases: "[f]irst, cases in which the specification discloses no algorithm; and second, cases in which the specification does disclose an algorithm but a defendant contends that disclosure is inadequate." *EON Corp.*, 785 F.3d at 623–24, quoting *Noah Sys. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed. Cir. 2012).

40.     For computer-implemented means-plus-function claims, the indefiniteness analysis thus requires two steps. "The first question is whether an algorithm is disclosed at all. If one is disclosed, then the court must be satisfied that it is sufficient." *Spa Syspatronics*, 117 Fed. Cl. at 384.

41.     Where an algorithm is disclosed in the specification, expert testimony is important because the question of whether that disclosure is adequate is judged "based on the skilled artisan's perspective." *EON*, 785 F.3d at 624.

42.     CMT only addresses the first of these two steps, contending that the '082 patent does not disclose any algorithms for the disputed claim terms. CMT therefore must show, by clear and convincing evidence, that the '082 patent's specification does not disclose any corresponding structure. *See TecSec,* 731 F.3d at 1349.

43.     Whether the specification discloses adequate structure "is not a high bar." *Biomedino, LLC v. Waters Techns. Corp.,* 490 F.3d 946, 950 (Fed. Cir. 2007). "All one needs to do … is recite some structure corresponding to the means in the specification, as the statute states, so that one can readily ascertain what the claims mean and comply with the particularity requirement." *Amtel Corp. v. Information Storage Devices,* 198 F.3d 1374, 1382 (Fed Cir. 1999). That determination "must be made in light of the knowledge of one of skill in the art." *Id.* at 1380.

44.     CMT does not challenge the sufficiency of the algorithms that Monode has identified for those claim terms. Therefore, if the Court finds that the '082 patent discloses algorithms for terms that CMT contends are indefinite, their sufficiency will be undisputed.

**B.      CMT Did Not Present Clear and Convincing Evidence of Indefiniteness**

45.     Exhibit C to the Pretrial Statement identifies CMT's intrinsic and extrinsic evidence in support of its indefiniteness contention. CMT cites generally to the '082 patent as intrinsic evidence without providing any pinpoint cites for any of the disputed claim terms, and it cites specific paragraphs of Mr. Habedank's report and excerpts of Dr. Goryankin's deposition testimony as extrinsic evidence. It does not cite to Mr. Habedank's deposition testimony or Dr. Goryankin's report.

46.     While CMT agrees that it has the burden of proof to establish that the '082 patent does not disclose sufficient structure, it simultaneously argues that "[t]here's no burden of proof," to establish that the '082 patent is invalid. (Hearing Tr., ECF # 32, at 29: 13-19.) Yet CMT concedes that, if the Court finds indefiniteness, "the effect of your ruling is that the patent is invalid." (*Id*. at 30:24-31:11.)

47.     CMT's argument is a distinction without a difference. The Federal Circuit consistently has held that "[t]he burden of proving indefiniteness remains on the party challenging validity and that they must establish it by clear and convincing evidence. This burden—of establishing invalidity of issued patent claims—has always been on the party challenging validity." *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015) (citing *Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. 91 (2011)) (per curiam).

48.     The Court therefore holds that CMT has the burden of proving indefiniteness by clear and convincing evidence. And for the reasons set forth and discussed below, the Court finds that CMT has not met that burden.

### 1.     CMT's Citations to the '082 Patent are Insufficient as Evidence

49.     As set forth in Exhibit C to the Pretrial Statement, CMT generally offers on the '082 patent as a whole as intrinsic evidence for its indefiniteness contentions.

50.     Consistent with CMT's contention that the '082 patent does not disclose any algorithms or other structure for the disputed claim terms, CMT did not provide pinpoint citations to the patent's specification to support its invalidity contention or briefing.

51.     Despite having the burden of proof, CMT also did not meaningfully address Monode's pinpoint citations to the specification that Monode claims disclose algorithmic structure for the disputed claim terms.

52.     CMT's general citation to the '082 patent in its invalidity contentions, its briefing and at the claim construction hearing is attorney argument that does not constitute admissible record evidence. *See Nomadix, Inc. v. Hewlett-Packard Co.,* 838 F. Supp. 2d 962, 966 (C.D. Calif. 2012) (patent contentions "are not themselves evidence; they are written by attorneys, and not based on personal knowledge or signed under penalty of perjury"); *Kimberly–Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:CV–09–1685, 2010 WL 4537002, at *2 (M.D. Pa. 2010) (patent contentions provide notice and are not considered evidence). CMT's general citation to the '082 patent therefore is not admissible evidence in support of its indefiniteness contentions. *See Amtel,* 198 F.3d at 1380-82 (determination of whether specification discloses "some structure corresponding to the means" is "made in light of the knowledge of one skilled in the art.").

53.     CMT's general reliance on the '082 patent also conflicts with the statutory presumption of validity that attaches to each duly-issued U.S. patent under 35 U.S.C. § 282(a). Behind this presumption lies the basic and long-standing proposition that a government agency such as the PTO is presumed to do its job correctly. As the Supreme Court explained, an invalidity contention "is an application to the court to set aside the action of one of the executive departments of the government." *Morgan v. Daniels*, 153 U.S. 120, 123-25 (1894).

54.     Patent examiners are presumed to be persons of ordinary skill in the art in the relevant technical field. *See In re Berg*, 320 F.3d 1310, 1315 (Fed. Cir. 2003) ("As persons of scientific competence in the fields in which they work, examiners … are responsible for making findings, informed by their scientific knowledge, as to the meaning of prior art references to persons of ordinary skill in the art…."). As evidenced by the '082 patent's issuance, a trained patent examiner evaluated the '082 patent as one of ordinary skill in the art, understood the meanings of each claim terms, and concluded that each meets all of the statutory requirements for patentability, including definiteness under 35 U.S.C. § 112(b).

55.     Because CMT's general citation to the '082 patent does not establish an legal error or constitute factual evidence to the contrary, it is not evidence that the examiner erred as a matter of law in allowing the '082 patent under 35 U.S.C. § 112(b). It therefore is not evidence that the disputed claim terms are indefinite and thus invalid for the same reason.

### 2.     Mr. Habedank's Opinions Are Insufficient as Evidence of Indefiniteness

56.     CMT also offers the opinions of Mr. Habedank as evidence that one of ordinary skill in the art would not be able to recognize corresponding structure within the specification of the '082 patent.

57.     For opinion testimony to be admissible under Federal Rule of Evidence 703, the proffered witness "must be qualified by 'knowledge, skill, experience, training, or education.'" *In re Scrap metal Antitrust Litig.,* 527 F.3d 517, 528-29 (6th Cir. 2008) (quoting Fed. R. Evid. 702). The party offering an expert's testimony must prove the expert's qualifications by a preponderance of the evidence. *Id.*, citing *Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 478 (6th Cir. 2008). In patent cases, an invalidity expert also must qualify as a person of at least ordinary skill in the art at issue. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008).

58.     Monode challenged Mr. Habedank's qualifications on multiple bases, including that he does not hold a bachelor's degree in computer-aided drafting and design as he claims, that he lacks sufficient qualifications because he could only recall taking a single "entry level" computer programming class that covered "very basic rudimentary programming," and that he lacks experience with technology expressly disclosed and applied in the '082 patent, including object-oriented programming techniques, XML and ActiveX, and Microsoft Windows application programming. (Monode Br., ECF # 27, at 6-10; Hearing Tr., ECF 32, at 57:10-58:22.)

59.     Monode also challenged Mr. Habedank's opinions as being merely conclusory. "[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed. Cir. 2005). Moreover, expert testimony "cannot be used to vary the plain language of the patent document." *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1332 (Fed. Cir. 2003); *see also Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1300 n.2 (Fed. Cir. 2005) (district court properly did not rely on proffered expert testimony to construe means-

plus-function term that was "either unsupported or contradicted by the express language of the written description") (internal citations omitted).

60. While the Court overruled Monode's objection and motion to exclude Mr. Habedank's opinions during the claim construction hearing, each of the bases Monode identified goes to the weight the Court ascribes to Mr. Habedank's opinions.

61. Mr. Habedank does not have a high degree of skill in the art, and his opinions consist of little more than repeated conclusory statements that the '082 patent does not disclose an algorithm corresponding to each disputed claim term.

62. Because CMT elected to only challenge whether the '082 patent discloses any algorithm corresponding to the disputed terms without addressing the sufficiency of the algorithms Monode contends are disclosed, it had to establish through admissible evidence that the parts of the specification to which Monode cited do not disclose algorithmic structure to carry its burden of proving indefiniteness by clear and convincing evidence.

63. Mr. Habedank, however, did not address Monode's citations to the specification. He therefore cannot opine on whether the disclosures corresponding to Monode's citations recite adequate structure. Accordingly, his opinions are not evidence of indefiniteness, irrespective of whether he is sufficiently qualified to testify as an expert and whether his opinions are merely conclusory.

### 3. CMT Cannot Rely on Dr. Goryankin to Meet its Prima Facie Burden

64. Finally, CMT cites to excerpts of Dr. Goryankin's deposition testimony as claimed extrinsic evidence of indefiniteness.

65. Dr. Goryankin was disclosed by Monode as a rebuttal expert under Local Patent Rule 4.3(b), not as an affirmative expert under Local Patent Rule 4.3(a). As such,

Monode argues that Dr. Goryankin's opinions only are relevant if, and only if, CMT first establishes its prima facie case of invalidity due to indefiniteness.

66.     In the Sixth Circuit, a party may not call another party's expert as its own witness. *See R.C. Olmstead, Inc. v. CU Interface, LLC,* 657 F. Supp. 2d 899, 904 (N.D. Ohio 2009) (citing *Zvolensky v. Ametek, Inc.*, 1998 WL 124047, at *2 (6th Cir. Mar. 12, 1998) (per curiam) (citing *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir.1984))). This limitation is consistent with Federal Rule of Civil Procedure 26(b)(4)(B), which "was created to prevent a party from … unfairly using another party's expert to build its own case." *Id.* at 905 (citing Fed. R. Civ. P. 26, Advisory Committee Notes (1970)). Thus, where a party lacks its own evidence on an issue for which it bears the burden of proof, it may not rely on its opponent's expert to carry its burden. *R.C. Olmstead*, 657 F. Supp. 2d at 905. CMT therefore cannot rely on Dr. Goryankin's deposition testimony to initially meet its clear and convincing evidentiary burden.

While CMT could not affirmatively rely on Dr. Goryankin's testimony for its case in chief, it had the opportunity to elicit unambiguous testimony from Dr. Goryankin on cross-examination at the claim construction hearing after Monode raised the many errors in CMT's use of his deposition testimony. CMT, however, voluntarily waived that opportunity when it elected to not call live witnesses in the Prehearing Statement. (ECF # 29 at 3.) As such, Monode did not call, and CMT did not cross examine, Dr. Goryankin at the claim construction hearing.

67.     Beyond the procedural defect of CMT's attempted reliance on Dr. Goryankin, his deposition testimony is not evidence of indefiniteness because he never actually opined that any of the disputed claim terms is indefinite.

68.     CMT's attempt to rely on Dr. Goryankin is not creditable as evidence. As Monode addressed in its responsive claim construction brief and at the claim construction hearing, CMT did not accurately or fairly quoted Dr. Goryankin's testimony. (Monode Br., ECF # 27, at 16-19; Hearing Tr., ECF #31, at 109:15-110:114:5.) And in at least one instance, it appears that CMT tried to leverage confusion borne out of the fact that English is not Dr. Goryankin's first language. (Monode Br., ECF # 27, at 17.) Any evidentiary benefit that Dr. Goryankin's deposition testimony otherwise may have been to CMT therefore is at best ambiguous and unhelpful to CMT.

69.     Accordingly, irrespective of whether CMT could rely on Dr. Goryankin as affirmative evidence in support of its prima facie case as a procedural matter, the deposition testimony to which CMT cites is not evidence of indefiniteness.

### 4.     Conclusion

70.     For these reasons, the Court concludes as a matter of law that CMT has not met its burden of proving indefiniteness by clear and convincing evidence.

### D.     Monode Successfully Rebutted CMT's Proffered Evidence

71.     Because the '082 patent is presumed valid, Monode does not have any burden of proving that the disputed claim terms are definite. *See Bosch Automotive Service Solutions, LLC v. Matal,* 878 F.3d 1027, 1040 (Fed. Cir. 2017) ("We have previously held that a party challenging patent validity on indefiniteness grounds carries the burden of proof.") (citing *Chicago Bd. Options*, 784 F.3d at 1141). Nonetheless, the evidence Monode presented rebuts any remaining basis for finding indefiniteness that might exist.

1. **Monode Identified Specific Algorithmic Structures in the Specification**

72.     In its claim construction contentions, Monode identified specific references in the specification that it contends disclose algorithmic structure for each of the disputed claim terms. (Pretrial Statement, ECF # 29, at Exh. B.) Because the '082 patent is statutorily presumed valid, Monode doing so calls into question CMT's invalidity contentions.

73.     As discussed above, the indefiniteness analysis comprises two steps for software-implemented means-plus-function claims, the first of which is determining whether the specification discloses an algorithm for the means-plus-function term. *Spa Syspatronics*, 117 Fed. Cl. at 384.

74.     Unlike CMT, Monode provided specific pinpoint citations to where it contends such supporting structure is disclosed in the specification. While CMT generally disputes whether the '082 patent expresses any such algorithms, it did not meaningfully address any of Monode's pinpoint citations to the specification that Monode asserts disclose algorithmic structure.

75.     CMT therefore did not overcome Monode's initial showing that the '082 patent discloses sufficient algorithmic structure for the disputed means-plus-function terms.

2. **Dr. Goryankin Rebuts CMT's Indefiniteness Contentions**

76.     Finally, even if CMT had presented evidence establishing its prima facie case of indefiniteness, Dr. Goryankin's opinions rebut CMT's contention that the '082 patent does not disclose any corresponding structure for the disputed claim terms.

77.     With more than three decades of relevant education and experience, Dr. Goryankin qualifies as one of ordinary skill in the art under both parties' definitions. He holds a master's degree in computer science from Chuvash State University and a doctorate

degree in computer science from St. Petersburg State Electrotechnical University (both in the former-USSR), and he served as a research scholar at Case Western Reserve University. He also has taught computer science at the university level, as both teaching assistant and as the deputy head of department for the Computer Science Department at Chuvash State University, where he taught courses in computer programming, computer logic, object-oriented programming, and digital systems design.[1] Dr. Goryankin additionally has worked as a computer engineer, administrator, and director, and he currently is the owner and president of a software development firm.

78.    In his report, Dr. Goryankin asserts that Mr. Habedank does not qualify as a person of ordinary skill in the art because he does not hold a bachelor's degree in computer science, electrical engineering or an equivalent degree and because he lacks sufficient relevant experience. Dr. Goryankin also opines that none of the disputed claim terms are indefinite, and he provides pinpoint citations to where he contends that algorithmic support for each claim term can be found in the '082 patent specification.[2]

79.    CMT does not dispute that Dr. Goryankin has sufficient knowledge, skill, experience, training and education to qualify as an expert on whether the '082 patent is indefinite. Nor does it attack Dr. Goryankin's opinions as conclusory.

80.    CMT does not identify any affirmative opinion by Dr. Goryankin that the '082 patent is indefinite. Instead, it loosely contends that Dr. Goryankin's deposition testimony is inconsistent with his opinions in his report. However, CMT has not identified any direct contradictions with Dr. Goryankin's opinions that call into question his credibility

---

[1] Goryankin Tr. 18:23-19:20:1.

[2] Report of Dr. Andrei Goryankin, ECF # 23-3.

or the sufficiency of his opinion that none of the disputed claim terms are indefinite. The Court therefore credits Dr. Goryankin's expert opinions and finds that they CMT's contention that the '082 patent does not disclose any corresponding structure for each of the disputed means-plus-function claim terms.

**3.** **Conclusion**

81.     For these reasons, the Court concludes as a matter of law that Monode has rebutted any evidentiary basis that otherwise may have existed for finding indefiniteness.

## CONCLUSION

For the reasons set forth herein, the Court holds that none of the claim terms identified by the parties is invalid as indefinite. Accordingly, the Court adopts the parties agreed-upon constructions for the non-disputed claim terms and Monode's proposed constructions for each of the disputed claim terms.

IT IS SO ORDERED.

Dated: _____, 2019            _____

                                         Judge Donald C. Nugent