IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MONODE MARKING** | ) | **CASE NO.:  1:18 CV 16** |
| **PRODUCTS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| v. | ) | |
| | ) | |
| **COLUMBIA MARKING TOOLS, INC.,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

This matter is before the Court following a Claim Construction hearing held on July 30, 2019, prior to which the Parties filed their Opening Briefs on Claim Construction (Docket #s 23 and 24); Response Briefs (Docket #s 25 and 27); and, a Joint Letter Regarding Claim Construction and Prehearing Statement (Docket #29). In addition, following the July 30, 2019 Hearing, the Parties submitted Post-Hearing Findings of Fact and Conclusions of Law (Docket #s 33, 34 and 35). Accordingly, the Claim Construction issues in the instant matter are now ripe for determination.

**I.      Background.**

On January 3, 2018, Plaintiff, Monode Marking Products, Inc. ("Monode"), filed this lawsuit against Defendant, Columbia Marking Tools, Inc. ("Columbia"), alleging infringement of U.S. Patent No. 6,974,082 ("the '082 Patent"). As stated in the Complaint, "the '082 Patent is generally directed to unique integrated marking systems, including integrated marking and

reading stations that control reading or marking of encoded information onto an article." Monode alleges that Columbia's I-Mark Software, including but not limited to the I-Mark II-Read System and compatible marking tools and accessories, infringes the '082 Patent. Columbia filed a Counterclaim against Monode, seeking declaratory judgment from the Court establishing that Columbia's products do not infringe on the '082 Patent and that the '082 Patent is invalid.

As discussed at length during the Claim Construction Hearing, Columbia argues that the '082 Patent is invalid due to indefiniteness – specifically, that the '082 Patent fails to comply with the statutory requirements of clearly associating structure (i.e., an algorithm) to the claimed software functions, as required under 35 U.S.C. § 112(2) for "means-plus-function" claiming.

## II. Standard of Review.

An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the product accused of infringing. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). It is the first step, commonly known as claim construction or interpretation, that is at issue at this juncture. Construction of patent claims is a question of law for the Court. *Id.* at 970-71.

### Indefiniteness.

"Indefiniteness is a matter of claim construction, and the same principles that govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005)). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the

prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Under this standard, a patent must be "precise enough to afford clear notice of what is claimed," *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015), while recognizing "that absolute precision is unattainable," *Nautilus*, 572 U.S. at 910. A patent's claims carry a presumption of validity and, "'consistent with that principal, a [fact finder is] instructed to evaluate . . . whether an invalidity defense has been proved by clear and convincing evidence.'" *Biosig*, 783 at 1377 (citation omitted). "[The] burden of proving indefiniteness remains on the party challenging validity." *Dow Chem. Co. v. NOVA Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

**Means-Plus-Function Claiming and Indefiniteness.**

Under 35 U.S.C. § 112, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, and such a claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof." 35 U.S.C. § 112. This form of claiming, known as "means-plus-function," "allows a patentee to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-48 (Fed. Cir. 2015) (citing *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1350 (Fed. Cir. 2003)).

3

"Structure disclosed in the specification qualifies as 'corresponding structure' if the intrinsic evidence clearly links or associates that structure to the function recited in the claim. *Id.* (citing *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)). "Even if the specification discloses corresponding structure, the disclosure must be of 'adequate' corresponding structure to achieve the claimed function." *Id.* at 1311-12 (citing *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc)). "Under 35 U.S.C. § 112, paras. 2 and 6, therefore, if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite." *Id.* at 1312 (citing *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1241 (Fed. Cir. 2007))." *Williamson*, 792 F.3d at 1352.

The Parties agree that the disputed claim terms of the '082 patent are expressed as "means-plus-function" claims. Once a claim element has been identified as being in means-plus-function form, its construction is a two-step process. *Williamson*, 792 F.3d at 1351. First, the Court must identify the claimed function, and second it must "determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* The '082 Patent is generally directed to a computer-implemented invention and, with computer-implemented inventions, the underlying structure must, under most circumstances, be more than a general purpose computer or a microprocessor. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008); see also *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012). The specification must "disclose an algorithm for performing the claimed function." *Williamson*, 792 F3d 1139, 1352. An "algorithm" is "a step-by-step procedure for accomplishing a given result," and may be expressed "in any

4

understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Ergo*, 673 F.3d at 1365 (citations and internal quotation marks omitted). In software cases, a patentee must sufficiently disclose the underlying structure/algorithms with sufficient definiteness so that the claim is understandable to one of ordinary skill in the art. *AllVoice*, 504 F.3d at 1236.

### III. Discussion.

The Parties have agreed upon the claimed function with regard to all of the disputed claim terms. (Claim Construction Hearing Transcript, Docket #32 ("Hearing Transcript"), at p. 35.) The Court must, therefore, determine what structure, if any, disclosed in the specification corresponds to each of the claimed functions. (Id. at p. 35.) Columbia argues the disputed claim terms in the '802 Patent are indefinite for failing to disclose a corresponding structure and, therefore, that the patent is invalid. Columbia stated during the Claim Construction hearing, "[O]ur construction is there is no corresponding structure, and therefore it's indefinite." Further, Columbia explained, "You can't construe the claim term because there is no corresponding structure." Columbia is not proposing an alternate claim construction for any of the software terms. "We are saying you can't construe these terms." (Hearing Transcript at p. 52.) Monode, however, argues that each of the steps identified relative to a particular claim term is incorporated by reference in the claim term and described in detail in the specification, and is understandable to one of ordinary skill in the art, thereby satisfying the structure requirement.

Columbia asserts that its expert, Andrew Habedank, determined that the specification "fails to disclose for each claimed software function (1) an algorithm, (2) clearly linked with the claimed software function." (Docket #35 at p. 4.) Columbia identifies Mr. Habedank, "engineer

5

manager" for Columbia, as a person having ordinary skill in the art who relied on his "extensive background in the part marking, traceability, automation, and programmable controller industry (including numerous professional certifications and experience with overseeing the design, manufacture, and installation of a wide-array of programmable marking system) . . ." Columbia states that Mr. Habedank has more than twenty years of experience and earned a degree in Computer Aided Drafting and Design from ITT Technical Institute in 1999.

However, Monode raised numerous questions relative to Mr. Habedank's asserted credentials; argues that Mr. Habedank is not qualified to render opinion testimony in this case as one of ordinary skill in the art; and, asserts that Mr. Habedank's opinions, if considered by the Court, "consist of nothing more than repeated conclusory statements that the '082 Patent does not disclose an algorithm corresponding to each disputed claim term." (Docket #34 at p. 10.) Specifically, Monode asserts that Mr. Habedank misrepresented his education and degree; has had only one programming class; and, is unfamiliar with multiple technologies recited in the patent, including object-oriented programming, XML, Active X, and Windows application programming.[1] The Court overruled Monode's blanket objection to Mr. Habedank's testimony, noting, however, that the Court would consider Monode's arguments regarding Mr. Habedank's

---

[1] Mr. Habedank indicated he received a Bachelor of Arts degree in computer-aided drafting and design from ITT Technical Institute in 1999. Monode asserts that Mr. Habedank graduated from high school in 1998; could not have earned a 4-year degree in 1999; and, that ITT did not offer a bachelor's degree in computer-aided drafting and design. Counsel for Mr. Habedank indicated during the Claim Construction hearing that Mr. Habedank started his education before 1998; that the ITT program was accelerated; that Mr. Habedank remembers receiving a bachelor of arts degree; and, that Mr. Habedank does not have access to his diploma or any other proof of obtaining said degree.

qualifications, or lack thereof, relative to the weight it would assign his testimony. (Hearing Transcript p. 59.)

Columbia relies heavily upon the deposition testimony of Dr. Andrei Goryankin, Monode's rebuttal expert, in arguing that the specification failed to disclose corresponding structure for the disputed claim terms.[2] Columbia does not challenge Dr. Goryankin's credentials. Rather, Columbia argues that Dr. Goryankin's testimony during deposition amounts to an admission that the '082 Patent discloses no structure. Dr. Goryankin stated, in part, "The purpose of the patent was to describe a concept of how you compile or construct the system consisting of multiple different components. It didn't say how they would work together. It just explained that they can work together and then you have to fill in the blanks in figuring out how to connect them." (Docket #24-7. at p. 170.) When asked whether the '082 Patent discloses an algorithm for accomplishing the claimed functions, Dr. Goryankin testified, "No, it doesn't. Again, because it's something you know or you would have to figure out." (Id. at p. 169.)

The Court reviewed the deposition of Dr. Goryankin in its entirety. While Dr. Goryankin is quite fluent in English, his first language is Russian, and there were indeed instances in which there did not seem to be a clear meeting of the minds between the Parties regarding certain technical and/or legal terms being discussed. The Court reviewed the passages cited by Columbia and, while the passages were quoted accurately, Dr. Goryankin explained elsewhere

---

[2] Dr. Goryankin has an MSc (1986) and PhD (1992) in Computer Science from Universities in the former USSR and attended the Weatherhead School of Management at Case Western Reserve University (1995-1996). He has been the president of Internet Database Software Incorporated since 2000 and has worked primarily as a contract employee for Monode since 2001. With Monode, Dr. Goryankin designed, developed and supports the software at issue in this case.

7

that the language used in the disputed claim terms is sufficient to state the required function, explaining that "as a programmer," certain things are "self-evident" and wouldn't need to be disclosed in the Patent. (Id. at p. 158.) Dr. Goryankin testified, "[Mr. Habedank] didn't have enough experience and maybe knowledge, education to be able to understand those things." (Id. at p. 168.) "Where he doesn't have enough background knowledge about things, so he doesn't see things which other [sic] person would see. So like the algorithm actually has enough information to implement things and he claims it's not possible to derive that information out of the other." (Id. at p. 171.) As explained by Dr. Goryankin:

> Like my first impression when I read his report was that he thinks of a patent in general, not specifically this patent, but in general that it's some sort of construction manual where you just flip through and flip through and you can write a program.
>
> That's not the case. The patent is [sic] abstract representation of something and usually it's not quite clear what to do when you read the patent. And that's where he was not understanding it. So that was glaring for me.

(Id. at p. 106.)

The Court listened intently to all of information and arguments presented during the July 30, 2019 Claim Construction hearing. The Court has thoroughly reviewed all Briefing; the Transcript prepared following the Claim Construction Hearing; and, all of the Exhibits and information offered by the Parties, including a detailed review of the deposition testimony of Mr. Habedank and Dr. Goryankin, and their respective Declarations. Columbia has failed to prove by clear and convincing evidence that the disputed claim terms are indefinite.

Columbia failed to sufficiently address the questions raised by Monode, and its rebuttal expert, Dr. Goryankin, regarding Mr. Habedank's experience and technical background. Further, the Court agrees with Monode that Mr. Habedank's opinions are conclusory and fail to provide

8

analysis by which the Court could confidently find that the language of the specification fails to disclose the required structure for the disputed means-plus-function claim terms. *See Phillips v. AWH Copr.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). Columbia has otherwise failed to prove to the Court by clear and convincing evidence that the asserted "structure" set forth in the specification relative to the disputed claim terms is insufficient to satisfy the requirements of means-plus-function claiming.[3]

## IV. Conclusion.

For the reasons set forth above, the Court finds Columbia has failed to prove by clear and convincing evidence that the '082 Patent is invalid as indefinite. The Court hereby adopts the Parties agreed-upon constructions for each of the non-disputed claim terms and adopts Monode's proposed constructions for each of the disputed claim terms.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
Senior United States District Judge

DATED: September 27, 2019

---

[3] In addition to the foregoing, Columbia suggested that the patent examination may have been defective or that the patent examiner may not have been qualified to review means-plus-function software-related claims. There is no evidence of either.