IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Monode Marking Products, Inc.<br><br>    Plaintiff,<br><br>    v.<br><br>Columbia Marking Tools, Inc.,<br><br>    Defendant. | Case No. 1:18-cv-00016-DCN<br><br>**JURY TRIAL DEMANDED** |

**CMT'S RESPONSE TO MONODE'S MOTION TO EXTEND DEADLINES**

Defendant Columbia Marking Tools, Inc. ("CMT") hereby responds to the Motion to Extend Deadlines filed by Monode Marking Products, Inc. ("Monode"). For the following reasons, CMT opposes Monode's Motion to Extend Deadlines with respect to the expired deadline to serve Final Infringement Contentions and consents to Monode's Motion to Extend Deadlines with respect to the deadline for fact discovery and the remaining deadlines, unexpired as of October 28, 2019.

**I. Introduction**

On October 15, 2019, Monode missed the deadline for serving its Final Infringement Contentions under LPR 3.10(b). In asking the Court to forgive its error, Monode's counsel highlights a recent and unrelated personal matter to divert attention away from its persistent neglect, and unfairly attempts to shift blame for its delinquency to CMT. Monode missing its deadline, however, was more than fifteen months in the making and is attributable solely to Monode's failure to take any timely discovery in this matter. Finding itself in a bad situation of its own-making, Monode now asks the Court for a do-over to the detriment of CMT. Monode's neglect leading to it missing the deadline to serve Final Infringement Contentions is not

excusable, however, and the Court should deny Monode's Motion to Extend Deadlines under Fed. R. Civ. P. 6(b)(1)(B) with respect to Final Infringement Contentions.

On October 28, 2019, CMT and Monode agreed to file a motion with the Court to extend the deadline for fact discovery and all remaining, unexpired deadlines. (*See* Decl. of S. Auvil, ¶ 7, Ex. B, p. 1.) The parties further agreed that they would reconvene on October 31, 2019, to discuss Monode missing its deadline to serve Final Infringement Contentions. (*Id.*) In Monode's Motion to Extend Deadlines, Monode improperly conflates its missed deadline of October 15, 2019, with the parties' agreement of October 28, 2019, to suggest that CMT is acting unreasonably. Unlike the written, confirmed agreement of October 28, 2019, however, there was never an agreement between the parties (written or oral) to extend Monode's deadline to serve Final Infringement Contentions.

As set forth below, the parties did not even mention extending a deadline, other than the deadline to complete fact discovery, until October 25, 2019—ten days after Monode missed its deadline to serve Final Infringement Contentions. Monode's failure to take any timely discovery in this litigation made it inevitable that Monode would be unable to provide Final Infringement Contentions by the October 15th deadline. In short, the circumstances do not justify retroactively extending the expired deadline to serve Final Infringement Contentions.

**II. Factual Background**

**A. Monode did not serve fact discovery until September 12, 2019—440 days after discovery started.**

Under LPR 1.3, "discovery is permitted to begin upon the filing of the Answer." CMT filed its Answer (Doc. 8) on June 29, 2018. Monode served its first and only discovery requests 440 days later, on September 12, 2019—after the parties had already exchanged initial infringement contentions, non-infringement contentions, invalidity and unenforceability

contentions, and validity and enforceability contentions; after the parties had fully briefed claim construction issues; after the Court had conducted a Claim Construction Hearing; and after the parties had provided the Court with proposed findings of fact and conclusions of law. (Decl. of S. Auvil, ¶ 2, Docs. 23–35). It is unclear why Monode elected not to seek discovery from CMT, including discovery that would enable Monode to complete and serve its Final Infringement Contentions.

### B. Monode failed to serve Final Infringement Contentions by the deadline of October 15, 2019.

CMT's responses to Monode's discovery requests of September 12, 2019, were due on October 15, 2019.[1] On September 27, 2019—fifteen days after Monode served its discovery requests—the Court issued its Claim Construction Order. (Doc. 36). Under LPR 3.10(b), "[e]ach party claiming patent infringement must serve on all parties 'Final Infringement Contentions' containing the information required L. P. Rule 3.1 within fifteen (15) days of the Court's claim construction ruling." Accordingly, the deadline for Monode to serve its Final Infringement Contentions was October 15, 2019,[2] coinciding, by chance, with the date on which CMT's responses to Monode's discovery requests were due. CMT timely served its responses to Monode's discovery requests on October 15, 2019. (Decl. of S. Auvil, ¶ 3.) By contrast, Monode missed the deadline to serve its Final Infringement Contentions on that same date. (*Id.*, ¶ 4.).

---

[1] This deadline fell on Saturday, October 12, 2019. Accounting for the weekend and the federal holiday of Columbus Day on Monday, October 14, 2019, the deadline was recalculated to be Tuesday, October 15, 2019.

[2] *See* note 1, *supra*.

3

### C. The October 8, 2019 phone call between counsel did not concern Final Infringement Contentions.

Under LPR 4.7, "fact discovery for all actions subject to these Local Patent Rules shall end no later than thirty (30) days after the Court's claim construction ruling."  Thus, fact discovery was scheduled to end on October 28, 2019.  On October 1, 2019, following, the Court's Claim Construction Order of September 27, 2019, counsel for CMT requested a phone call with counsel for Monode.  (Decl. of D. Prueter, ¶ 2.)  On October 8, 2019, counsel for Monode, David Movius, and counsel for CMT, Steven Auvil and David Prueter, had a call.  (Decl. of S. Auvil, ¶ 5; *see also* Decl. of D. Prueter, ¶ 3).  During the call, counsel for both parties discussed the idea of extending the approaching deadline for fact discovery until January or February 2020, after the holidays.  (*Id*.)  At no point during the call did counsel for either party mention any other court deadlines, nor was it implied or otherwise understood that the parties were discussing anything other than the deadline for fact discovery.  (*Id*.)  The purpose of extending the deadline for fact discovery was to give the parties additional time to exchange limited information relevant to a potential business solution and, if no such resolution could be reached, to allow the parties to complete fact discovery.  (*Id*.)

The October 8th phone call ended with counsel for each party agreeing to consult with their respective clients and then meet and confer again to confirm whether their client had agreed to extend the deadline for fact discovery.  (*Id*.)  The telephone conversation of October 8, 2019, is accurately summarized in the email CMT's undersigned counsel, Steven Auvil, sent to Monode's counsel on October 9, 2019.  (Decl. of S. Auvil, ¶ 5, Ex. A, p. 1; *see also* Decl. of D. Prueter, ¶ 4.)  In that October 9, 2019, email, the undersigned counsel for CMT also confirmed his clients' approval to extend the deadline for fact discovery and "give peace a chance."  (Decl. of S. Auvil, ¶ 5, Ex. A, p. 1.)

4

Counsel for Monode did not respond to the October 9, 2019, email or return a voicemail that Mr. Auvil left for Mr. Movius on October 15, 2019. (Decl. of S. Auvil, ¶ 6.) Still having not heard anything from Monode's counsel, on October 21, 2019, CMT proceeded to serve notices of depositions on Monode that were to occur in Monode's counsel's offices on October 28, 2019, the last day of fact discovery. (Decl. of D. Prueter, ¶ 5.)

Because Monode did not respond to or acknowledge CMT's notices of depositions, on October 23, 2019, counsel for CMT, David Prueter, called counsel for Monode, Mark Guinto, to inquire about extending the deadline for fact discovery or otherwise to confirm the deposition schedules. (*Id.*, ¶ 6.) Mr. Prueter spoke with Mr. Guinto, who said he had not seen the emails to which Mr. Prueter referred. (*Id.*) While still on the phone with Mr. Prueter, Mr. Guinto searched for and located CMT's emails. (*Id.*) Mr. Guinto then stated that he would attempt to get Mr. Movius's attention but that Mr. Movius had been and was currently focused on mediation for a different matter. (*Id.*) The call ended, and shortly thereafter, Mr. Guinto called back counsel for CMT, Mr. Prueter, and stated that he had spoken with Mr. Movius. (*Id.*) Mr. Guinto then confirmed, for the first time, Monode's willingness to extend the deadline for fact discovery until the end of February 2020. (*Id.*) Based on this representation, Mr. Prueter stated that CMT would withdraw the deposition notices. (*Id.*) Late in the day on October 23, 2019, Mr. Prueter sent an email to Mr. Guinto, copying Mr. Movius and Mr. Auvil, accurately summarizing the telephone conversations and offering to prepare a draft stipulation to extend the deadline for fact discovery to file with the Court. (*Id.*, Ex. A, p. 1.) The next day, on October 24, 2019, Mr. Guinto responded to all recipients with "Thanks… [w]e will look for the draft." (*Id.*)

On October 25, 2019, prior to sending the draft stipulation to extend fact discovery, Mr. Prueter called Mr. Guinto and suggested that the draft stipulation also extend remaining

5

deadlines. (Decl. of D. Prueter, ¶ 7.) Mr. Guinto agreed to extend the deadline for fact discovery as well as the remaining deadlines, and Mr. Prueter accurately summarized this conversation in the body of the email to which the draft motion was then attached. (*Id.*, Ex. B, p. 4.) Approximately three hours later, having received no response, Mr. Prueter sent another email to counsel for Monode asking "[w]ill you… be able to respond to this [the draft stipulation] before the end of the day so that we can get it on file with the Court before Monday?" (*Id.*) Mr. Guinto responded to the email stating "[w]e have some minor edits to include the final infringement contentions." (Decl. of D. Prueter, ¶ 7, Ex. B, p. 3.) Mr. Prueter responded that "[w]e cannot agree to retroactively extend a deadline that has passed." (*Id.*) Mr. Prueter proposed filing the stipulation with the Court at least with respect to extending the deadline for fact discovery and the remaining deadlines. (*Id.*)

In response, counsel for Monode refused to agree to extend the remaining deadlines without also extending the expired deadline for Final Infringement Contentions. (*Id.*) Approximately an hour and a half later, Mr. Movius sent an email to Mr. Auvil and Mr. Prueter stating that he has "primarily been focused on [a personal matter]." (Decl. of D. Prueter, ¶ 7, Ex. B, p. 2.) Mr. Prueter responded to Mr. Movius's email the next day, on October 26, 2019, expressing that he and Mr. Auvil were "sorry to learn of your personal circumstances, and wish you well in dealing with them." (Decl. of D. Prueter, ¶ 7, Ex. B, p. 1–2.) In the email, Mr. Prueter reiterated that he and Mr. Auvil did not have the client's approval to agree to retroactively extend an expired deadline that Monode missed. (*Id.*) CMT further explained in its correspondence that, should the parties reach a settlement agreement, Monode missing its deadline to serve Final Infringement Contentions would be moot, and it, therefore, made little

6

sense to burden the Court and the parties with the issue at this time. (*Id.*) In reply, Mr. Movius asked for reconsideration or he would immediately seek the Court's intervention. (*Id.*).

Counsel for both parties conducted a phone call on October 28, 2019, in an attempt to resolve their impasse. (Decl. of S. Auvil, ¶ 7.) The parties confirmed their agreement to move the Court to extend the deadline for fact discovery and also agreed to move the Court to extend the remaining unexpired deadlines. (*Id.*) The parties' agreement of October 28, 2019, was memorialized in an email to which both parties confirmed their respective understanding. (*Id.*, Ex. B, p. 1.) The parties met and conferred again on October 31, 2019, to discuss the expired deadline to serve Final Infringement Contentions, but were unable to come to a resolution with respect to retroactively extending this deadline. (Decl. of S. Auvil, ¶ 7.)

### III. Legal Argument

#### A. The law requires a showing of excusable neglect to retroactively extend an expired deadline to act.

Fed. R. Civ. P. 6(b)(1)(B) states, "the court may, for good cause, extend the time… on motion made after the time has expired if the party failed to act because of excusable neglect." The Sixth Circuit Court of Appeals addressed the question of what constitutes excusable neglect in the context of Fed. R. Civ. P. 6(b)(1)(B) and concluded that "'the excusable neglect standard has consistently been held to be strict, and can be met only in extraordinary cases.'" *Neal v. Ellis*, 2018 U.S. App. LEXIS 23984, *7 (6th Cir. 2018) citing *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) (quoting *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989)). First, the movant must demonstrate that his or her failure to meet the deadline was a case of neglect. *Turner*, 412 F.3d 629, 650. As the Sixth Circuit explained, "[n]eglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Id.*, citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S.

380, 388 (1993).  Second, the movant must establish that the failure to act was excusable.  *Turner*, 412 F.3d 629, 650.

When evaluating whether a parties' neglect was excusable, courts often consider (1) whether granting the extension will prejudice the non-moving party; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the moving party acted in good faith; and (5) whether clients should be penalized for their counsel's mistake or neglect.  *Pioneer Inv. Servs.,* 507 U.S. 380, 385 citing *In re Dix*, 95 B. R. 134, 138 (CA9 Bkrtcy. Appellate Panel 1988).  With respect to the fifth factor, the U.S. Supreme Court made clear: "clients must be held accountable for the acts and omissions of their attorneys.[3]"  *Pioneer Inv. Servs.*, 507 U.S. 380, 396.

### B. Monode missed the deadline for serving its Final Infringement Contentions.

With respect to LPR 3.1, this Court has stated that "the local rules provide for an orderly process for exchange of contentions that is tied to the claim construction process."  *Fast Felt Corp. v. Owens Corning Roofing & Asphalt*, Case No. 3:14 CV 803, 2017 U.S. Dist. LEXIS 212728, *2 (N.D. Ohio, July 26, 2017.)  As this Court explained, "the purpose of post-*Markman* amendments is to refine a party's infringement theories in order to conform to the *Markman* ruling."  *Id.*  "The purpose is not to allow a party to spring entirely new theories that potentially disrupt the case schedule."  *Id.*, at *2–*3.[4]

---

[3] Notably, although Monode cites the U.S. Supreme Court's decision in *Pioneer*, it identifies only the first four factors, omitting the fifth factor, "whether clients should be penalized for their counsel's mistake or neglect." (Doc. 37-1, p. 4.)

[4] It is well-established that infringement is an affirmative allegation that places the burden of proof on the patent owner.  *Agawam Co. v. Jordan*, 74 U.S. 583, 609 (1869).  The Federal Circuit has made clear that infringement is a factual question for the determination of the jury.  *See Cybor Corp. v. FAS Techs., Inc*., 138 F.3d 1448, 1457–72 (Fed. Cir. 1998 (en banc).

In the instant *Markman* ruling, your Honor "adopt[ed] the Parties agreed-upon construction for each of the non-disputed claim terms and adopt[ed] Monode's proposed constructions for each of the disputed claim terms." (Doc 36, p. 9.) Thus, there were no unexpected claim constructions with which to conform. Still, despite the clear dictate of LPR 3.10(b), Monode missed the deadline to serve its Final Infringement Contentions on October 15, 2019. (Decl. of S. Auvil, ¶ 4.)

### C. Monode's failure to serve final infringement contentions was inexcusable.

Monode has failed to show excusable neglect so as to justify relief from the expired deadline. Monode's failure to act spans more than fifteen months and is not only inexcusable but inexplicable. Monode failed to serve any fact discovery until 440 days after discovery opened. Coincidently, the deadline for CMT's written responses to Monode's belated discovery requests fell on the same day that Monode's Final Infringement Contentions were due. By that time, it was too late for Monode to serve Final Infringement Contentions that were meaningfully different than its Initial Infringement Contentions.

More than a year ago, on October 9, 2018, after receiving Monode's Initial Infringement Contentions, CMT wrote to Monode explaining that "the infringement suit is not well grounded." (Decl. of S. Auvil, ¶ 8, Ex. C.) In that letter, CMT stated, "[w]e doubt that a serious pre-suit investigation was performed by Monode before filing this case. There are countless problems with the infringement analysis, and Monode has no realistic chance of proving infringement in this case." (*Id.*) CMT then listed five major defects in Monode's claim against CMT, including four important differences between the asserted claims and CMT's products to "highlight deep, insurmountable flaws in Monode's infringement case." (*Id.*) Monode did not acknowledge or respond to this letter, nor did Monode take any discovery to determine whether there was any evidence that supported its allegations against CMT. (Decl. of S. Auvil, ¶ 8.)

More recently, during the Claim Construction Hearing on July 30, 2019, your Honor asked "what evidence do they [Monode] have that you[ CMT a]re infringing on their patent?" (Doc. 32, 23:10–11.) Counsel for CMT responded:

> "Well, they've taken no discovery to speak of, no discovery at all. That's something we noted in our briefing. It's an odd situation at this point." "Our system doesn't work that way. There's been no discovery. We've told them [Monode] that. There's been no discovery – "

(*Id.*, 23:12–25.) Monode waited another 44 days (440 days in total)—until September 12, 2019—to serve its first discovery requests. But at this point, it was too late. CMT's responses to Monode's discovery requests would be due on October 15, 2019, the same day Monode was required to serve its Final Infringement Contentions under LPR 3.10(b). Having taken no discovery, Monode had no reasonable expectation of preparing Final Infringement Contentions.

Excusable neglect is nowhere to be found under these circumstances. Monode provides no rationale, nor does one exist, to justify its failure to serve any discovery in this matter for more than fourteen months. Local Patent Rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d. 1355, 1364 (Fed. Cir. 2006). Because Monode flouted the requirements set by the LPRs, it is too late for Monode to try to crystallize its infringement theory beyond what is contained in its Initial Infringement Contentions.

### D. Monode's counsel's recent personal matter is not why Monode missed its deadline to serve Final Infringement Contentions.

Pointing to a recent personal matter of its lead counsel, David Movius, Monode suggests that its delinquency is excusable. This personal matter, however, according to Mr. Movius, occurred on October 10, 2019. (*See* Decl. of D. Movius, Doc. 39, p. 6.) By October 10, 2019, it was inevitable that Monode's failure to take any timely discovery prevented it from preparing Final Infringement Contentions. Practically speaking, Monode could not, on the same day it was

to receive discovery responses, simultaneously turn around and serve Final Infringement Contentions based on those responses.  Nor has Monode argued otherwise.

### E. Monode's counsel's account of the October 8, 2019, phone call is inaccurate, unsupported, and illogical.

Mr. Movius's account of the October 8, 2019, phone call between himself and CMT's counsel, Mr. Auvil and Mr. Prueter, is inaccurate, unsupported, and illogical.  No agreement regarding scheduling of any deadlines was reached on the October 8th call as corroborated by Mr. Auvil's October 9, 2019 email (to which Mr. Movius did not reply).  (Decl. of S. Auvil, ¶ 5, Ex. B; see also Dec. of D. Prueter, ¶ 3.)  This led CMT to serve deposition notices on October 21, 2019, for depositions that ultimately did not go forward only because the parties *later* reached an agreement to extend the fact discovery deadline on October 23, 2019.  (Decl. of D. Prueter, ¶¶ 5–6.)  These circumstances alone prove that Mr. Movius had no basis to conclude on October 8, 2019 that CMT had agreed to extend Monode's deadline to serve its Final Infringement Contentions.  Mr. Movius never even raised the issue on the October 8th call, and CMT had no incentive to raise it.  (Decl. of S. Auvil, ¶ 5; *see also* Decl. of D. Prueter, ¶ 3.)

In sum, the facts do not support nor is there any reasonable rationale to infer that CMT agreed to extend Monode's deadline to serve Final Infringement Contentions on the phone call of October 8, 2019.  While Mr. Movius's recent personal matter is unfortunate, his attempt to shift blame to CMT and its counsel is wrong and troubling.  Through its own fault, Monode missed the deadline for serving Final Infringement Contentions, plain and simple.  And through its own neglect, Monode failed to take fact discovery over the course of more than fifteen months that may have enabled it to serve meaningful Final Infringement Contentions.  Accordingly, Monode should be held to its Initial Infringement Contentions as provided by LPR 3.1.

### F. Extending the missed deadline for Monode to serve its Final Infringement Contentions would severely and unfairly prejudice CMT.

It would be unjust to permit Monode to serve Final Infringement Contentions after the expired deadline. Were the Court to retroactively extend the expired deadline for Monode to serve its Final Infringement Contentions, CMT would be severely and unfairly prejudiced. For more than a year, CMT has relied on the theory of infringement contained in Monode's Initial Infringement Contentions that Monode served on August 29, 2018. CMT's defenses are predicated on the theory of infringement contained in those contentions. Monode should not have a chance to change its infringement theory based on discovery it should have obtained many months ago.

## IV. Conclusion

For the reasons stated above, Monode has failed to show excusable neglect to justify relief from the missed deadline to serve Final Infringement Contentions. Accordingly, CMT opposes Monode's Motion to Extend Deadlines with respect to the expired deadline to serve Final Infringement Contentions. CMT consents to Monode's Motion to Extend Deadlines with respect to the deadline for fact discovery and the remaining deadlines, unexpired as of October 28, 2019. A proposed Order is appended hereto.

Dated: November 18, 2019

Respectfully submitted,

*/s/ Steven M. Auvil*
Steven M. Auvil (0063827)
steven.auvil@squirepb.com
David P. Prueter (0091391)
david.prueter@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower, 127 Public Square
Cleveland, OH 44114
Telephone: (216) 479-8500

Facsimile: (216) 479-8780

*Counsel for Defendant*
*Columbia Marking Tools, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the forgoing was filed on November 18, 2019, using the Court's CM/ECF System. Service is made upon the parties through the CM/ECF System.

/s/ *Steven M. Auvil*
Steven M. Auvil
