UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MONODE MARKING PRODUCTS, INC., | ) | |
| | ) | Case No.     1:18-CV-16 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| COLUMBIA MARKING TOOLS, INC., | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the court on Defendant, Columbia Marking Tool, Inc.'s ("CMT")

Limited Motion for Summary Judgment of Non-Infringement.   (ECF #87).  Plaintiff, Monode

Marking Products, Inc. ("Monode") filed an Opposition, (ECF #111), and the parties respectively

filed a Reply and Sur-Reply, in favor of their positions.  (ECF #116, 117-1 ).  The matter is now fully

briefed and ready for disposition.

## FACTS AND PROCEDURAL HISTORY[1]

U.S. Patent U.S. Patent No. 6,974,082 (the "'082 Patent") addresses an improvement to

industrial marking machines which encode, mark and detect information on various manufactured

---

[1]

   The facts and procedural history have been taken from the undisputed statements set forth in the parties'
briefs, and official court records.  In accordance with the applicable standards on a motion for summary
judgment, genuine questions of material fact have been resolved in favor of the non-moving party, in this case,
the Plaintiff.

articles in order to help manufacturers track inventory and maintain quality control.  (ECF #104, Ex. H at 1:5-10).  These marking machines print, stamp, etch, or otherwise mark articles with coded information, such as bar codes.  Vision tools can then read, identify and record information so the part can be tracked and recorded during its life cycle.  The '082 Patent protects a system, invented by Monode, that integrates vision and marking systems.  This system includes a software control system comprising "data processing means for processing the input so as to generate a desired output, said means having an information processing request protocol, a machine interaction protocol and system integrity verification protocol."  (ECF #87-1, Ex. 3).

CMT designs and manufactures programmable marking systems for industrial application.  These systems incorporate software (the "I-Mark software").  Monode brought this action against CMT, alleging that the I-Mark software incorporated in CMT's marking systems infringes claims 1-23 of the '082 Patent.  Each of these claims require a computer that has "specially-programmed software comprising "an information processing request protocol, a machine interaction protocol, and a  system integrity verification protocol."  (ECF #36).  The parties agreed, during claim construction, that "system integrity verification protocol" should be construed as  "a series of rules or instructions that relate to the system obtaining an install or update."  (Ecf #24, at 24-25).  The Court adopted this construction.  (ECF #36).   Following construction, CMT sought permission to file a limited Summary Judgment motion challenging Monode's claim that CMT products contain the "system integrity verification protocol" required under the '082 Patent.

In support of its Motion, CMT relies on the Patent language, and on declarations from an employee, Mr. Ryder and from Dr. Wyatt S. Newman, an expert retained to provide expert opinion on the source code for the accused products.  At the time of filing, CMT had not yet turned over the

- 2 -

source code to Monode.  Following the filing of the Limited Summary Judgment Motion, Monode was able to obtain the code and had a limited amount of time to review the code and obtain its own expert to analyze its content.  Unsurprisingly, the experts offer differing opinions on whether CMT's source code includes a system integrity verification protocol, as construed by the Court's claim construction.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941

- 3 -

(6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with

- 4 -

the Ninth Circuit's position that "'only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party." *Anderson*, 477 U.S. at 250.  Further, summary judgment is as appropriate in a patent

case as in any other type of case. *Desper Prods., Inc. V. QSound Labs, Inc.*, 157 F.3d 1324, 1332

(Fed. Cir. 1998).  The defense of non-infringement may appropriately be decided on summary

judgment if no reasonable jury could find that every limitation recited in a properly construed claim

is found in the accused product either literally or under the doctrine of equivalents. *U.S. Philips

Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1374 (Fed. Cir. 2007); *see also Lucent Technologies,

Inc. v. Gateway, Inc.,* 525 F.3d 1200 (Fed. Cir. 2008).

## ANALYSIS

A patent is infringed when a person "without authority makes, uses, offers to sell or sells any

patented invention, with the United States . . . during the term of the patent." 35 U.S.C. § 271(a).

Under the "all elements rule," infringement can be found only when each and every element of a

claim, or its equivalent, can be shown to be present in the accused product. *De Marini Sports, Inc. v.

Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001)*; PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, 525

F.3d 1159, 1168 (Fed. Cir. 2006).  In this case the parties agree that if the software for the accused

products do not contain a "system integrity verification protocol," which has been construed as "a

series of rules or instructions that relate to the system obtaining an install or update," they do not

contain every element of the cited claims, and are, therefore, not infringing.  The accuser, in this case

Monode, bears the burden of proving infringement by a preponderance of the evidence.

Literal infringement occurs when each and every element of a claim is found to be literally

present in an accused product. *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, *1308

(Fed. Cir. 2002);  DeMarini Sports,* 239 F.3d at 1331; *Panduit Corp. V. Dennison Mfg. Co.*, 836

- 6 -

F.2d 1329, 1330 n.1 (Fed. Cir. 1987). When an accused product is not found to literally infringe a patent claim, it may still be an infringing product under the doctrine of equivalents if the differences between an individual element of the claimed invention and an element of the accused product are sufficiently insubstantial. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). The substantiality of the difference(s) is determined by using a three-part "function-way-result test." *Id.* at 40-41. Under this test, an accused product element is equivalent to a claimed element if it performs substantially the same function in substantially the same way to accomplish the same result. *Graver Tank & Mfg.* v. *Linde air Prods. Co.*, 339 U.S. 605, 608 (1950). The doctrine of equivalents does not apply, however, when an amendment, made for a reason substantially related to patentability, narrows the patent's scope enough to exclude the difference(s) at issue. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). "[I]f a theory of equivalence would entirely vitiate a particular claim element. . . there would be no further material issue for the jury to resolve." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir 2006).

CMT offers Mr. Ryder's testimony as evidence that the I-Mark software does not maintain or communicate over a network with a centralized computer system (e.g. server). It also offers testimony from their expert Dr. Newman, who reviewed the source code and claims to have found no code or data processing means that he believes could be construed as a system integrity verification protocol, either literally or under the doctrine of equivalents. (ECF #87, Ex. 1, ¶¶ 8, 10, 27 and Ex. 2, ¶¶ 40, 46, 56, 65). According to CMT if a customer wants to install or update software, they must contact CMT customer service. CMT customer service will then check to see if one is available, and, if so, they will send and email or a thumb drive with the update attachment to the customer who

can upload and install the update.  Monode does not challenge CMT's representation that the I-Mark system does not automatically install updates to the customer's product without human authorization and manual input.  They do argue, however, that the Patent does not require the computer system to automatically and mechanically install updates.  Rather, Monode argues that, under the agreed claim construction, a product infringes if the software includes rules and instructions that *relate* in any way to the system obtaining an install or update, even if it is not capable of actually obtaining or installing updates without additional user input.

Monode cites Mr. Ryder's testimony to support its own position.  Specifically, it cites testimony in which he explains that the CMT source code contains both "controller" and "firmware" updates, which update the hardware level code of the primary hardware components of the I-Mark systems.  (Ryder Decl. ¶12).  Although these updates are initiated manually by the user, once triggered, they  "cause[] rules and instructions within the I-Mark software source code" to initiate a series of events that, according to Monode's expert Dr. Malek, " relate to obtaining an install or update."  (Malek Report ¶42; ECF #104, Ex. G, source code).   Monode's expert concludes, therefore, that these functionalities constitute  "system integrity verification protocols" as defined during claim construction.  CMT counters that even if the protocols cited by Monode relate to the installation of updates they do not relate to the system *obtaining* the updates.  Further, they argue that the these protocols were common in a wide variety of systems long before the '082 Patent was issued.  These arguments are supported by their expert's opinion testimony.

At this stage of the proceeding, there is insufficient evidence to support a Motion for Summary Judgment on the limited issue before the Court.  Both sides have presented some evidence to support their respective position on the existence of a system integrity verification protocol within

the accused products, and there are conflicting expert opinions and testimony. Because discovery is not complete and Monode only recently obtained the source code that is critical to the determination of this issue, it is conceivable that additional discovery and investigation could uncover evidence sufficient to justify revisiting this issue at a later point in the proceedings. Indeed, the Court has recently allowed both parties to revise their Final Contentions based on new theories of liability raised by Monode's acquisition of the source code. Therefore, CMT's Limited Motion for Summary Judgment is DENIED, but without prejudice to re-raising the issue at a later date, if appropriate.

IT IS SO ORDERED.


DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Date: June 1, 2021